IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID BARTHOLOMEW CLARK, | ) | |
| # 194 417, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CV-160-ECM-KFP |
| | ) | [WO] |
| KARLA JONES, WARDEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

I.   **INTRODUCTION**[1]

Plaintiff Daniel Clark filed this pro se 42 U.S.C. § 1983 action on March 8, 2018, while an inmate at the Ventress Correctional Facility in Clayton, Alabama.[2] Clark sues Warden Karla Jones, Captain Pamela Harris, Classification Specialist Charlotte Wright, Lieutenant Elijah Rouse, Sergeant Josiah Haggins, Sergeant Robert Lindsey, Officer Lewis McDonald, and Officer Radreeka Hawkins, alleging they subjected him to (1) retaliation for his prior litigation activity; (2) unconstitutional conditions of confinement; and (3) due process violations arising from his disciplinary and reclassification proceedings. Clarks seeks damages and injunctive relief and requests trial by jury. Doc. 1 at 1–3.

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.
[2] Since filing the complaint Clark has been released from custody. Doc. 56.

Defendants filed a Special Report and Answer, A Supplemental Special Report, and supporting affidavits and evidentiary materials addressing the claims in the Complaint. Docs. 14, 40. In these documents, Defendants deny they acted in violation of Clark's constitutional rights. The Court issued an order directing Clark to file a response and advising him that his response should be supported by sworn affidavits or other appropriate evidentiary materials. Doc. 17 at 2. The order further cautioned Clark that, unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." Doc. 17 at 2. Clark responded to Defendants' reports, *see* Doc. 52, but his response does not demonstrate there is any genuine dispute of material fact. The Court will treat Defendants' special reports as a motion for summary judgment and resolve this motion in favor of Defendants.

## II.    STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party could not prove his case at trial).

When Defendants meet their evidentiary burden, as they have, the burden shifts to Clark to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party

produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein,* 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving

4

and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court disregard elementary principles of production and proof in a civil case. Here, Clark fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## III.   DISCUSSION

### A.   Sovereign Immunity

To the extent Clark sues Defendants in their official capacities, they are entitled to sovereign immunity from monetary damages. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (citation and quotation marks omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849. "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Selensky*, 619 F. App'x at 849; *Jackson v. Ga. Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B.    Injunctive Relief

Clark makes a request for injunctive relief against Defendants. Because Clark is no longer incarcerated, his request for injunctive relief is moot. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). There is no indication Clark will be returned to prison, much less be returned in the immediate future. "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (citation and quotation marks omitted); *see Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citation and quotation marks omitted) (observing that "[l]ogically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past."). As it is clear from the pleadings and records before the Court that Clark is no longer incarcerated, his request for equitable relief is moot.

### C.    Qualified Immunity

Defendants argue they are entitled to qualified immunity from damages in their individual capacities. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate

"clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when their alleged conduct occurred. Therefore, Clark must allege facts that, when read in a light most favorable to him, show Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Clark must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the

novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynsk*i, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

D.      **Section 1983 Claims**[3]

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations

of his constitutional rights. In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory . . . subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress. . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of

a right secured by the Constitution or laws of the United States and, second, that the alleged

deprivation was committed or caused by a person acting under color of state law. *West v.*

*Atkins*, 487 U.S. 42, 48 (1988).

1.      **Retaliation Claim**

Clark complains that between January 18 and February 23, 2018, he was subjected

to retaliatory conduct for filing lawsuits, including subjecting him to disciplinary action,

reclassifying him to a higher security level, placing him in segregation, and subjecting him

to unconstitutional conditions while housed in the segregation unit. Doc. 1 at 2–3.

---

[3] To the extent Clark raises additional allegations of constitutional violations through any properly
supported opposition that were not affirmatively pled in his Complaint, the law is settled that a plaintiff
may not "amend" his Complaint through his opposition by raising a new claim(s). *See Hurlbert v. St. Mary's*
*Health Care Sys., Inc*., 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim
raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314
(11th Cir. 2004) (finding the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise
new claims at the summary judgment stage"). The Court, therefore, addresses Clark's claims against
Defendants as alleged in the Complaint and considers the facts only to the extent that they support those
claims.

The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986); *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989). Conclusory allegations of retaliation, however, cannot demonstrate the existence of each element requisite to establishing retaliation. *Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012), (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit . . . conclusory allegations as true"); *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (explaining that because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations").

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton*, 631 F.3d at 1341–42. Clark must establish three elements: "(1) 'his speech or act was constitutionally protected'; (2) 'the defendant's retaliatory conduct adversely affected the protected speech'; and (3) 'there is a causal connection between the retaliatory actions and the adverse effect on speech.'" *Id*. at 1341 (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397. Regarding the causation prong, a court "asks whether the defendants were subjectively motivated" by the plaintiff's protected act. *Smith*, 532 F.3d at 1278. If the plaintiff shows that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341–42 (quoting *Smith*, 532 F.3d at 1278). Upon production of evidence demonstrating

a legitimate reason for the conduct or actions in question, the plaintiff, with the ultimate burden of proof, must show there is a genuine dispute of material fact concerning the defendant's defense. *See Osterback v. Kemp*, 300 F.Supp.2d 1238, 1254 (N.D. Fla. 2003). Federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and "approach prisoner claims of retaliation with skepticism and particular care. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The allegations submitted by Clark in his Complaint are not a picture of clarity. Based on the record, the Court finds Clark challenges as false a disciplinary infraction issued to him on January 18, 2018, for his assault on another inmate. Docs. 1, 52. According to Clark, the incident report prepared by Lt. Rouse on January 18, 2018, amounted to a "prepared story."[4] Doc. 52 at 3–4. Clark claims Defendants were motivated by his litigation

---

[4] An inmate's claim that a false disciplinary charge was initiated against him does not itself violate a prisoner's constitutional rights. *See Freeman v. Rideout*, 808 F.2d 949, 952–53 (2d Cir.1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges");

activities to issue a fabricated disciplinary, reclassify him to a higher security level, assign him to segregation, and ultimately transfer him to another correctional facility. Doc. 52 at 3–4.

Defendants' evidence includes their affidavits, certified copies of Clark's medical records, and other certified institutional records, including segregation logs covering the relevant period. Among the prison records is an institutional incident report dated January 18, 2018, which reflects that on that date Sgt. Haggins received notice that inmate Andrew Combs was taken to the Health Care Unit for a medical assessment. After an investigation, correctional officials determined Clark had used an unidentified object to assault inmate Combs in Dorm F4 over inmate debts.[5] Sgt. Haggins placed Clark in handcuffs and escorted him to the medical unit for a body chart. After entering the medical unit, Clark began acting in a disorderly fashion and refused medical care. Clark was then placed in leg restraints and escorted to the restricted housing unit. Disciplinary action was instituted against Clark for assault on an inmate with a weapon, disorderly conduct, and failure to obey a direct order. Doc. 14-1 at 1–2; Doc. 14-2 at 1–2.

On January 22, 2018, Clark was served with a disciplinary notice for violating Administration Regulation 907—assault with a weapon on an inmate. Following a disciplinary hearing on February 14, 2018, the hearing officer found Clark guilty of the

_Hanrahan v. Lane_, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in _Wolff v. McDonnell_, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation).

[5] Defendants submitted the inmate body chart of Andrew Combs dated January 18, 2018, in which he stated to medical staff that "Daniel Clark beat me with a stick." Doc. 14-2 at 3. Clark's body chart dated January 18, 2018, reflects that he told medical personnel he feared for his life and refused a body chart. Doc. 14-2 at 4.

charged conduct. The hearing officer heard the testimony of the arresting officer, Clark, and two witnesses called by Clark. Clark also submitted questions to the witnesses. On completion of the proceedings, the hearing officer found Clark guilty of the disciplinary charge based on the testimony presented and sanctioned him to forty-five days of disciplinary segregation, forty-five days of loss of phone and canteen privileges, and a recommendation for a custody review. Warden Jones approved the disciplinary on February 16, 2018. Doc. 14-2 at 10–14; Doc. 41-1 at 4–23.

On February 22, 2018, Clark received notice that he would meet with a reclassification team because of the negative behavior on January 18, 2018. A reclassification hearing was held March 1, 2018. Clark was present at the hearing and was permitted to make a statement, call witnesses, and ask questions, none of which he did. Following the hearing, the reclassification team recommended Clark's custody be increased from medium level four to medium level five and that he be transferred to any security level five institution to free up restrictive housing cells at Ventress. On March 6, 2018, the Central Review Board approved the custody increase, citing the assault of another inmate with a weapon. Doc. 14-2 at 15–20; Doc. 14-3 at 1–2.

Defendants affirm Clark was subjected to disciplinary action and an increased security classification based on the January 18, 2018, incident with inmate Combs. Warden Jones testified that no records were falsified, and no classification regulations were employed to punish Clark. Rather, Warden Jones affirms Clark was subjected to disciplinary and reclassification proceedings because of his assault of another inmate with a weapon. Doc. 14-3 at 1–2; Doc. 14-5 at 1–2.

Clark's filing of lawsuits constitutes protected conduct under the First Amendment. Regarding the second element, the Court finds Clark fails to explain any deterrence from exercising First Amendment rights. *See Bennett*, 423 F.3d at 1250 (internal citations omitted) (explaining that a "plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights"). Even if Clark could establish the first two elements of his clam, Clark would still fall short. He fails to satisfy the third requisite element of a retaliation claim— a causal connection between his constitutionally protected activity and the alleged adverse actions of Defendants.

Defendants' evidence reflects Clark was subjected to disciplinary action on January 18, 2018, and found guilty of the challenged conduct following a disciplinary hearing on February 14, 2018. Clark's interaction with inmate Combs on January 18, 2018, also resulted in review of Clark's custody level. Clark received notice of a pending reclassification and, following the hearing, correctional officials recommended Clark be reclassified from level four security to level five and be transferred to any level five institution to free up restrictive housing cells at Ventress. Defendants have shown legitimate reasons for subjecting Clark to disciplinary action, custody reclassification, and his transfer from Ventress. Clark has not come forward with evidence to dispute that these actions were motivated by retaliation instead of legitimate institutional rules governing inmate behavior. Clark has submitted no direct evidence that his legal activity was the motivating factor in his receiving a disciplinary infraction and a custody reclassification, and nothing in the record suggests that issuance of the infraction and resulting change in

custody were a mere pretext to punish him for that activity. Defendants have submitted admissible evidence showing their actions were not predicated upon a retaliatory motive but over his failure to conform or adhere to institutional rules governing inmate conduct.

Further, an inmate cannot state a claim for retaliatory disciplinary proceedings where the "discipline [was] imparted for acts that a prisoner was not entitled to perform." In *O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011), the Eleventh Circuit stated:

> [W]e agree with the Eighth Circuit that a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction. *See, e.g., Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (involving allegations of false disciplinary reports and concluding "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule"); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (noting inmate alleged officer was lying but concluding that the finding of an actual violation of prison rules was based on some evidence of the violation and "essentially checkmates [the prisoner's] retaliation claim"); *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) ("[N]o claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform.").

*Id.* at 1215–16. In this case, the evidence shows Clark received due process during the disciplinary proceedings, and there was some evidence to support the determination reached by the hearing officer. *See Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Superintendent v. Hill*, 472 U.S. 445 (1985). Defendants deny the allegations of retaliation made by Clark and deny any awareness or involvement in the actions made the basis of his retaliation claim. To the extent Clark argues the mere fact he filed prior lawsuits against Defendants or other correctional officials supports his retaliation claim, he produces no evidence beyond his own conclusory allegations that the challenged actions were causally

related to that conduct, and his claim is not supported by the record. *O'Bryant*, 637 F.3d at 1215. "A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision subject to exhaustive challenge, solely because he was engaged in a First Amendment right. Even though prison officials do not have the authority to prohibit inmates from filing [lawsuits,] it does not follow that every time an inmate files a [lawsuit] the act of doing so renders the exercise of prison authority suspect." *Cranford v. Hammock*, 2010 WL 916031 *8 (N.D. Fla. 2010) (internal quotation marks and citations omitted).

Even if the finding of guilt as to the disciplinary charge does not per se bar the retaliation claim here, Clark's claim fails because he has not presented evidence of retaliatory animus on the part of Defendants, and the record reflects Defendants would have taken the same disciplinary actions in the absence of Clark's protected activity. *O'Bryant*, 637 F.3d at 1219 (citing *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir.1995) (affirming summary judgment for defendant because plaintiff "produced nothing, beyond his own conclusory allegations, suggesting that defendant['s] [] actions in compliance with the strip search regulations were motivated by a retaliatory animus"); *Moton*, 631 F.3d at 1341 (quotation marks omitted) (holding that "[t]o establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights").

Here, Clark provides no facts from which the Court could, at a minimum, infer a retaliatory motive by any Defendant beyond his allegation that the challenged conduct occurred in retaliation for complaints he filed against Defendants or correctional officials. No evidence has been presented that Defendants knew of Clark's previous litigation or that

they were in any way personally impacted by it. Rather, Clark does nothing more than make the conclusory allegation that Defendants knew of his prior litigation activity and that their conduct in subjecting him to disciplinary and reclassification proceedings and their attendant sanctions was motivated by retaliation. This allegation is insufficient to overcome Defendants' dispositive motion. *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

The record before the Court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer retaliation as the motivating factor for the challenged actions. And the circumstances, when taken as a whole, do not support making such an inference. Because Clark's allegations fail to support a First Amendment retaliation claim, Defendants are entitled to qualified immunity.

### 2.  Disciplinary Claim

Clark alleges a violation of his Fourteenth Amendment right to due process because he was "maliciously prosecuted" when Defendants falsified records and intimidated witnesses. The Court considers Clark to challenge as false the January 18, 2018, disciplinary action he received for assault on an inmate with a weapon. Defendants deny falsifying institutional records and maintain Clark received the disciplinary as a result of this assault. Docs. 14-1–14-4.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on admittedly false information to deny a prisoner consideration for parole was arbitrary

and capricious treatment violative of the Constitution. The Eleventh Circuit, however,

carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Ga. State*

*Bd. of Pardons & Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*,
> *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the
> conclusory allegation that the Board must have relied upon erroneous
> information because otherwise the Board would surely have granted him
> parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due
> process right to examine his prison file for the alleged errors. Unlike the
> instant case, in *Slocum* the state did not admit that it had relied upon false
> information in denying parole nor did the plaintiff present any evidence that
> his prison file even contained any false information. We held in *Slocum* that
> prisoners do not state a due process claim by merely asserting that erroneous
> information may have been used during their parole consideration. *Id.* at 942.
> We also determined that prisoners do not have a due process right to examine
> their prison files as part of a general fishing expedition in search of false
> information that could possibly exist in their files. *Id*. In the case at bar, we
> are confronted with prison authorities who admit that information contained
> in Monroe's files is false and that they relied upon such information, at least
> in part, to deny Monroe parole and to classify him as a sex offender. As we
> stated, the parole statute does not authorize state officials to rely on
> knowingly false information in their determinations. *Thomas [v. Sellers]*,
> 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the instant false information

claim.

Defendants Jones and Wright assert the information on which they relied regarding

Clark's disciplinary and classification proceedings is correct and an accurate representation

of Clark's negative conduct and the basis for reclassifying him. Clark has presented no

evidence that any knowingly false information was provided or used during any stage of

the disciplinary and classification proceedings. Of specific importance, there is no

admission by any Defendant that the information utilized in levying the disciplinary

infraction against Clark or reclassifying him was false, incorrect, erroneous, or perjured. Moreover, Clark's conclusory assertion regarding the potential use of false information does nothing more than raise the possibility that information in these records may be false, which fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim."). Consequently, Defendants are entitled to qualified immunity on Clark's false disciplinary claim.

### 3.    Classification Claim

Clark alleges Defendants violated his Fourteenth Amendment due process rights when they maliciously reclassified him to a higher security level. Doc. 1 at 3. Defendants state Clark was reclassified in accordance with the Alabama Department of Corrections' regulations because of his assault with a weapon on an inmate after prison officials recommended Clark be reviewed for a custody increase based on this behavior. Doc. 14-3 at 1–2; Doc. 14-4; Doc. 14-5 at 1–2.

The law is settled that an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An inmate "has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." *Kramer v. Donald*, 286 F. Appx. 674, 676 (11th Cir. 2008) (per curiam) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)) (noting that Congress has given prison officials full discretion to control

conditions of confinement, including prisoner classification); *see also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (explaining that "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). Consequently, prison officials may assign inmates to any security classification level without necessarily violating any constitutional right of the inmates. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460 (1983). Because Clark has no constitutional right to a specific classification or security status, correctional officials' decision to recommend him for an increased custody level did not, without more, violate his constitutional rights.

Clark maintains Defendants acted with malice by increasing his custody level. This claim entitles Clark to no relief. As explained, a prisoner's custody level is not a constitutionally protected interest—correctional officials may assign Clark to any classification level without implicating due process rights or protections. *See Moody*, 429 U.S. at 88 n.9. Therefore, to state a due process claim based on Defendants' classification of him, Clark must demonstrate Defendants' conduct or actions were done "maliciously or in bad faith." *Hendking v. Smith*, 781 F.2d 850, 852 (11th Cir. 1986) (holding that a classification system contains no inherent constitutional invalidity but becomes constitutionally offensive only if "the regulation is administered maliciously or in bad faith").

Correctional officials recommended Clark be reviewed for an increase in his security level based on his assault of another inmate. Clark received notice of the pending reclassification and attended a reclassification hearing. To the extent Clark's claim reflects

his disagreement with prison officials' determination that he met the ADOC's classification criteria for an increase in his custody level, it does not make their decision arbitrary or capricious. Further, Clark presents no evidence indicating that any Defendant or other correctional official engaged in arbitrary or capricious action by recommending him for a higher custody level. Therefore, the Court concludes Defendants' conduct in relying on the assault against another inmate to recommend Clark for a custody increase was "not arbitrary and capricious, but reasonable and appropriate." *Hendking*, 781 F.2d at 852. Because Clark's allegations fail to demonstrate a due process violation, Defendants are entitled to qualified immunity on this claim.

### 4. Assignment-to-Segregation Claim

Correctional officials placed Clark in the segregation unit of Dorm D on January 18, 2018, after he became disorderly in the health care unit where he was taken after the incident with inmate Combs. Following a disciplinary hearing on February 14, 2018, the hearing officer found Clark guilty of assault on an inmate with a weapon, sanctioned him with 45 days in disciplinary segregation and a temporary suspension of telephone and canteen privileges, and recommended him for a custody review. Doc. 14-2 at 11–14. To the extent Clark maintains his placement on segregation violated his due process rights, he is entitled to no relief.[6]

---

[6] Clark makes a conclusory assertion of an equal protection violation based on his assignment to the segregation unit. Doc. 1 at 3. Review of Clark's allegations, however, reflect this claim is appropriately addressed as a due process claim under the Fourteenth Amendment.

To state a claim for denial of due process under the Fourteenth Amendment, Clark must allege that a constitutionally protected life, liberty, or property interest was at stake. As explained, the Constitution itself does not give prisoners an interest in being classified to a particular area within a penal facility. *Cf. Meachum*, 427 U. S. at 224 (finding that "[t]he Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution"). Further, settled law holds that prison administrators are accorded wide deference in determining the policies and procedures for handling inmate populations, and federal courts rarely interfere in such discretionary decisions. *See generally Sweet v. South Carolina Dept. of Corrections*, 529 F.2d 854, 859 (4th Cir. 1975) (en banc) (describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation).

> [T]he Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones*, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *cf. Dudley v. Stewart*, 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests). In the first situation, the

liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485-486 (observing that disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (holding that "the punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns"); *see also Meachum*, 427 U.S. at 225 (finding no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 (finding "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law"). In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, the deprivations imposed upon Clark based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due

24

Process Clause of its own force." *Id*. This Court must therefore determine whether the actions about which Clark complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

> As the Supreme Court explained:
>
> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin*, 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin*, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id*., at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*., at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id*., at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223 (2005).

Applying the *Sandin* inquiry, the Court concludes the temporary loss of privileges, the recommendation for a custody level review, and short-term confinement in segregation "though concededly punitive, do[ ] not represent a dramatic departure from the basic conditions" of the sentence imposed upon Clark. 515 U.S. at 485. Accordingly, it is clear that the sanctions fail to "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Defendants are therefore entitled to qualified immunity on this claim.

### 5. Confrontation Claim

In connection with his disciplinary claim, Clark makes the conclusory allegation that Defendants intimidated his witnesses or refused to call all of his witnesses who would have established that he was the victim in the incident with inmate Combs. Doc. 1 at 3; Doc. 52-4 at 4. To the extent Clark complains that Defendants violated his right to confront a witness as guaranteed by the Sixth Amendment, the Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." "The Sixth Amendment right to confront one's accusers is available only in criminal trials. 'Prison disciplinary [and classification] proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.' *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Taylor v. Wallace*, 931 F.2d 698, 701 (10th Cir.1991) ('*Wolff* does not require the confrontation and cross-examination of witnesses in prison disciplinary proceedings.')." *Kucera v. Terrell*, 214 F. App'x 729, 730 (10th Cir. 2006); *Henderson v. United States Parole Comm'n*, 13 F .3d 1073, 1078 (7th

Cir. 1994) (holding "a prison disciplinary proceeding is not a criminal prosecution" and prisoners "in this context do not possess Sixth Amendment rights to confront and cross-examine witnesses"). It is clear that no violation of the Sixth Amendment occurred here, as "the Sixth Amendment does not guarantee prisoners the right to confront their accusers in a disciplinary [or reclassification] hearing." *Kucera*, 214 F. App'x. at 730. Defendants are entitled to qualified immunity on this claim.

### 6.    Violation-of-Agency-Regulations Claim

Clark alleges Defendants violated ADOC regulations during his disciplinary and reclassification proceedings. This claim entitles him to no relief. An alleged violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights. That state law or state agencies prescribe certain procedures does not mean those procedures acquire federal constitutional dimension. *Sandin*, 515 U.S. at 481–82 (observing that prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (explaining that mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples*, 375 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates."); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (explaining that "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations ...."); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (finding the adoption of mere procedural guidelines does not give rise to a liberty interest and failing to follow regulations

does not, in and of itself, violate due process); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (finding that "failure to follow prison rules or regulations do not, without more, give rise to a constitutional violation"); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527–28 (11th Cir. 1987) (finding that violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

### 7.  Conditions-of-Confinement Claim

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. The "objective component" of the analysis requires an inmate to demonstrate that the condition about which he complains is sufficiently serious to violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Caldwell*, 748 F.3d at 1099. While an inmate "need not await a tragic event" before seeking relief, he must at the very least show that a condition of his confinement "pose[d] an unreasonable risk of serious damage to his future health" or safety. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation omitted).

The subjective component of the analysis requires the inmate-plaintiff to show the defendant prison officials "acted with a sufficiently culpable state of mind" regarding the condition at issue. *Hudson*, 503 U.S. at 8 (quotation marks and citation omitted). The proper standard is that of deliberate indifference, *Wilson v. Seiter*, 501 U.S. 294, 303 (1991), but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 837–38 (1994); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citation omitted) (holding that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal quotation marks and citations omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533

F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*.

Only actions that deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes those conditions of confinement that involve the wanton and unnecessary infliction of pain. *Id*. at 346. Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). Prison conditions that may be "restrictive and even harsh, are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Id*. Conditions, however, may not be "barbarous" or contravene society's "evolving standards of decency." *Id*. at 345–46. Although "[t]he Constitution 'does not mandate comfortable prisons' . . . neither does it permit inhumane ones[.]" *Farmer*, 511 U.S. at 832 (quoting *Rhodes*, 452 U.S. at 349). For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler*, 379 F.3d at 1289–90. Thus, a prisoner's conditions of confinement are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

Clark asserts he was housed in segregation from January 18 to February 23, 2018, and that for a three-day period Defendants Lindsey and Hawkins turned off his water and toilet and denied him food. Clark also alleges that periodically during this time he was denied water, lights, and warmth. Doc. 1 at 3.

Defendants' undisputed evidence shows Clark interacted with correctional and medical staff numerous times a day while housed in segregation. These interactions included: (1) meal service two to three times each day; (2) opportunities to shower; (3) medication administration; (4) exercise opportunities; (5) trips to the infirmary for medical care; and (6) visits from mental health care staff and members of the segregation review board. Doc. 40-1 at 1–30. The record evidence reflects that Clark submitted several sick call requests while housed in segregation. They do not mention any complaints or concerns stemming from the conditions under which Clark was housed, and he did not voice any complaints or concerns when he was seen in the medical unit. Additionally, Sgt. Lindsey testified that, while his interaction with Clark was limited, at no time did Clark voice any complaints when the guard conducted his checks in the restricted housing unit or when he assisted with the institutional counts within Dorm D. Officer Hawkins denies any knowledge of Clark being denied meal trays during her assignment to Dorm D as a rover and testifies that Clark never informed her of any issues regarding the water in his cell. In sum, Defendants deny Clark was subjected to the conditions about which he complains or deny any knowledge or awareness of them. Docs. 14-5–14-10; Doc. 40-1.

Clark's allegation that he was denied meal trays for three days is simply not supported by the evidence of record. *See* Doc. 40-1. While he claims Defendants'

segregation logs depict several instances that show he did not receive a meal (Doc. 52 at 7), review of this evidence shows that correctional personnel placed the letter "N" for "no" or the letter "Y" for "yes" to show which shift (day or night) provided Clark's meals. Consequently, the number of "Ns" reflected in the meal columns of the segregation records were not indicative of Clark not receiving a meal but only reflective of which shift delivered the meal. Doc. 40-1 at 20-29. Further, Clark's assertions about the conditions of his segregation cell make clear they were of limited or sporadic duration, as he states in his opposition that Sgt. Lindsey turned his water off "one night" and that correctional and medical staff would turn his water back on after it was turned off. Doc. 52-30 at 3.

Assuming the truth of Clark's statement, as the Court must at this stage of the proceedings, the Court finds the allegations either wholly unsupported by the unrefuted evidence or Clark has not asserted that the alleged deprivations caused him any injury. At most, Clark's allegations reflect only that he was inconvenienced or experienced some discomfort—though none is alleged—from the conditions about which he complains. And while Clark complains about his water and toilet being turned off sporadically, he does not indicate he was ever denied access to either while housed in segregation, and the unrefuted segregation logs belie his contention he went without meals for a three-day period.

The Constitution does not mandate that prisons be comfortable, *Rhodes*, 452 U.S. at 349, and "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Chandler*, 379 F.3d at 1296. While the conditions alleged by Clark may, at times, have been uncomfortable, inconvenient, unpleasant, or objectionable, he has not shown that he was denied the minimal civilized measure of life's necessities, deprived of

a single human need, or subjected to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 349 (quotation marks and citation omitted) (finding that "routine discomfort is part of the penalty prisoners may pay for their offenses, and prisoners cannot expect the amenities, conveniences, and services of a good hotel"). The Court therefore concludes that Clark's allegations do not satisfy the objective component of establishing a conditions-of confinement-claim, and consequently he has failed to state an Eighth Amendment claim. *See Chandler*, 379 F.3d at 1297 (recognizing the objective and subjective components of an Eighth Amendment conditions claims but observing the subjective component need not be considered if the inmate-plaintiff failed to meet his burden under the objective component).

Even if Clark had established the objective component of his Eighth Amendment claim, he fails to demonstrate deliberate indifference or reckless disregard by Defendants with respect to his health or safety. Specifically, Clark presents no facts or evidence indicating any Defendant subjectively knew of a substantial risk of harm to his health or safety while he was housed in segregation and disregarded this risk so as to establish deliberate indifference. Clark has, thus, failed to carry his burden of showing Defendants were subjectively aware about the conditions about which he complains, much less that he faced a "substantial risk of serious harm" and disregarded that risk. *Carter*, 352 F.3d at 1349-1350. Consequently, Clark has failed to meet his burden of showing Defendants committed a violation of a constitutional right, and they are entitled to qualified immunity on his Eighth Amendment conditions-of-confinement claim.

## IV.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendants' Motion for Summary Judgment (Docs. 14, 40) be GRANTED;

2.      This case be DISMISSED with prejudice.

3.      Judgment be ENTERED in favor of Defendants.

4.      Costs be TAXED against Plaintiff.

It is further ORDERED that on or before **March 3, 2021**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 17th day of February, 2021.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE